JS 44 (Rev. 0 )

# CIVIL COVER SHEET

18    2187

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JAMES EVERETT SHELTON
316 Covered Bridge Road
King of Prussia, PA 19406

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

## DEFENDANTS
ARETE FINANCIAL GROUP
1261 E. Dyer Rd. #100,
Santa Ana, CA 92705

County of Residence of First Listed Defendant   Orange
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
William R. Mitchell, Esquire
101 Pacifica Suite 155,
Irvine, CA 92618

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1   U.S. Government
  Plaintiff
- ☒ 3   Federal Question
  *(U.S. Government Not a Party)*
- ❏ 2   U.S. Government
  Defendant
- ❏ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | Liability | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) ❏ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ❏ 196 Franchise | | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts ❏ 893 Environmental Matters ❏ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | **IMMIGRATION** | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | ❏ 462 Naturalization Application | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | ❏ 448 Education | ❏ 550 Civil Rights ❏ 555 Prison Condition ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Federal Telephone Consumer Protection Act, 47 USC § 227 & Fair Credit Reporting Act, 15 USC 1681
Brief description of cause:
Defendants telephoned my private telephone in violation of the TCPA and unlawfully pulled my credit report.

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
28,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*
JUDGE _____   DOCKET NUMBER _____

DATE
5/24/18

SIGNATURE OF ATTORNEY OF RECORD
*James E. Shelton*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**CMR**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| JAMES EVERETT SHELTON | : | **CIVIL ACTION** |
| v. | : | |
| ARETE FINANCIAL GROUP, et. al | : | NO. **18   2187** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (X)

| 5/24/2018 | *James E Shelton* | |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 484-626-3942 | 888-329-0305 | jeshelton595@gmail.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

### Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)      The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)      In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)      The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)      Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)      Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.



James Everett Shelton
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
jeshelton595@gmail.com

**Plaintiff, Pro Se**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES EVERETT SHELTON**<br>**316 Covered Bridge Road**<br>**King of Prussia, PA 19406** )<br>)<br>) | |
| ) | |
| **Plaintiff,** ) | **Civil Action** |
| ) | |
| **vs.** ) | **No.  18  2187** |
| ) | |
| **ARETE FINANCIAL GROUP**<br>**1261 E. Dyer Rd. #100,**<br>**Santa Ana, CA 92705** )<br>)<br>) | |
| ) | |
| **SHUNMIN HSU**<br>**1261 E. Dyer Rd. #100,**<br>**Santa Ana, CA 92705** )<br>)<br>) | |
| ) | |
| **PHU LOC**<br>**1261 E. Dyer Rd. #100,**<br>**Santa Ana, CA 92705** )<br>)<br>) | |
| ) | |
| **Defendants** ) | **Jury Trial Demanded** |
| ) | |

### COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, restitution,

reinstatement, statutory damages, court costs, and injunctive relief under rights pursuant to

Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and

deliberate and knowing tortious activity ARETE FINANCIAL GROUP ("Arete"), SHUNMIN

HSU ("Hsu"), individually and as Chief Financial Officer of Arete, and PHU LOC, individually

and as Chief Executive Officer of Arete, in negligently and/or willfully contacting Plaintiff via

1

Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system ("RoboCalls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.     Introduction

1.      Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.      Plaintiff brings this action to challenge Arete's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Arete's and Arete's agents' illegal telephone solicitations by which it markets its products and services through its ATDS calls, and Arete's failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3.      "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

4.      The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

5.      Plaintiff alleges that Defendant Arete commissioned numerous telemarketing calls to Plaintiff's cellular telephone number for the purposes of advertising Arete's services, using an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

6.      Arete itself then directly placed several more automated calls to the Plaintiff.

7.      Plaintiff never consented to receive any of these calls.

8.      All of the claims asserted herein arise out of Arete's illegal telephone solicitation campaign and are a common fact pattern.

## II.      Jurisdiction and Venue

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10.     Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County. Plaintiff received the phone calls to his private mobile telephone number as a permanent resident of Montgomery County. Defendant Arete conducts business in this judicial district by calling Pennsylvania consumers. Plaintiff's telephone number has a (484) Pennsylvania area code and is registered to Plaintiff's home address. Each of the Defendants has sufficient minimum contacts with this county, and otherwise purposely avail themselves of the markets in this county. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent…; it occurred when the [facsimile] was received."

## III.      Parties

11.     Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

3

12.     Defendant ARETE FINANCIAL GROUP ("Arete") is a California corporation with a registered principal address of 1262 E. Dyer Rd. #100, Santa Ana, CA 92705, and a registered agent of Shunmin Hsu. Arete transacts business in, *inter alia*, Montgomery County, Pennsylvania. Arete markets and sells, *inter alia*, debt relief services.

13.     Defendant SHUNMIN HSU ("HSU") is an adult individual who is the Chief Financial Officer and registered agent of Arete. It is believed, and therefore averred, that Hsu is also a one of the primary owners of Arete. Hsu is one of the primary individuals who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Arete's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, California, and nationwide.

14.     Defendant PHO LOC ("LOC") is an adult individual who is the Chief Executive Officer of Arete. As an executive and/or one of the owners of Arete, Loc is one of the primary individuals who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Arete's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, California, and nationwide.

15.     At all times herein mentioned, Arete, Hsu, and Loc (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

16.     Defendants, and each of them, aided and abetted, encouraged and rendered substantial

4

assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

17.     At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

## Background
### The Telephone Consumer Protection Act

18.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

19.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

5

20.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

21.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.**

6

22.     Under the TCPA, an individual such as Hsu or Loc may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 227 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*

47 U.S.C. § 227 (emphasis added).

23.     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g., Jackson v. Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

24.     Defendant Hsu and Loc are personally liable under the "participation theory" of liability because they are executives and/or Principal owners of Arete, knew of Arete's violations, and directed employees and/or agents of Arete to continue making those violations.

25.     This is because Defendant Hsu and Loc authorized and oversaw each of Arete's telemarketing processes and calls which were made on behalf of Arete.

26.     Furthermore, Defendant Hsu and Loc are also personally liable because they were responsible for ensuring Arete's agents and/or employees' TCPA compliance.

7

## IV.    Factual Allegations

27.    Arete provides debt settlement and debt consolidation services.

28.    Arete uses telemarketing to promote its services.

29.    Arete's telemarketing efforts also include the use of "automatic telephone dialing systems" or "robocalls" to transmit a message, as prohibited by 47 U.S.C. § 227(b)(1)(B).

30.    At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

31.    Plaintiff is financially healthy and does not need any debt settlement or consolidation services.

32.    Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015, more than 31 days prior to the calls.

33.    On or about February 13, 2018 at 4:04 PM, Plaintiff received a call which displayed on his caller ID as 878-222-2171 to his cellular telephone number, 484-626-3942.

34.    Plaintiff attempted to answer the call but the call was abandoned after 4 seconds. As Plaintiff

35.    At 5:02 PM, Plaintiff called the number back.

36.    Plaintiff heard a long pause, followed by a machine noise and a distinctive balloon-popping sound prior to being connected with a human being, who had a strong foreign accent.

37.    When a human being arrived on the phone line, the Plaintiff was asked several questions about his purported "debt", and after being asked several questions and being "pre-qualified" for a debt relief program, Plaintiff received a scripted sales pitch about debt settlement programs.

8

Plaintiff was deemed "eligible" for such programs after giving satisfactory responses to the questions.

38.     The agent attempted to transfer Plaintiff to a representative in the United States, however, due to high call volume or technical problems (probably due to the fact that thousands or millions of robocalls were being made at once), no agents were available to speak with Plaintiff. As a result, the call dropped.

39.     At 5:09 PM, Plaintiff received another automated call from 949-239-6868. Plaintiff waited on hold for less than 1 minute and the call was dropped once again.

40.     At 5:10 PM, Plaintiff received another automated call from 949-239-6868. The call lasted 10 seconds. After Plaintiff heard a distinctive click and pause, followed by a machine noise and a balloon-popping sound, the call disconnected abruptly.

41.     At 5:12 PM, Plaintiff received another automated call from 949-239-6868. Finally, Plaintiff was transferred over to an agent, Bryan Ruiz, at Arete.

42.     During that call, Plaintiff took steps to ascertain the identity of the caller and feigned interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with their company information. However, Plaintiff never consented to receive any additional telemarketing calls.

43.     As a point of fact, to the extent that "consent" was supplied during the call, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first

9

place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call."

44.     Plaintiff spoke extensively with Bryan Ruiz, pretending to be interested in debt relief or debt settlement services being offered by the defendant. Plaintiff provided some of his personal information to Defendants, including his social security number. Providing this information was a pre-requisite for Plaintiff to be qualified for Defendant's programs.

45.     As a result of providing his information to Defendants, Arete Financial Group made an unauthorized "hard inquiry" into Plaintiff's Trans Union credit report. Plaintiff had not consented to this hard inquiry.

46.     Hard inquiries or "hard pulls" are visible to third-parties who obtain a consumer's credit report.

47.     Moreover, each "hard pull" can result in a credit score reduction of up to five points. See *Harkins v. Diversified Collection Servs., Inc.* No. CIV. PJM-12-1229, 2012 WL 5928997, at *1, n. 1 (D. Md. Nov. 26, 2012).

48.     In fact, it is common for creditors to use the number of hard pulls on a consumer's credit report as a basis to *deny* an extension or continuation of credit.

49.     Hard pulls stay on a person's credit report for up to two (2) years.

50.     The hard inquiry damaged Plaintiff's credit report and credit score, damaged Plaintiff's credit reputation, harmed Plaintiff's creditworthiness, and caused Plaintiff frustration and headache. Plaintiff also abstained from taking advantage of further credit opportunities during this time, because of the hard inquiry and the damage it caused to his credit score.

51.     The Fair Credit Reporting Act (FCRA) prohibits users of a person's credit report from obtaining consumer reports unless the user has a permissible purpose for procuring the report defined in the Statute. Specifically, 15 U.S.C § 1681 of the FCRA states:

> A person shall not use or obtain a consumer report for any purposes unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this Title by a prospective user of the report through a general or specific certification.

52.     A permissible purpose under the Statute is for obtaining a credit report is for the use in connection with a credit transaction involving a consumer. 15 U.S.C. § 1681a(3)(A).

53.     If the consumer has neither initiated a transaction nor authorized the provision of a full credit report, the procuring entity can only see limited information about the consumer and cannot pull a consumer's credit report. 15 U.S.C. § 1681(b)(a)(3)(A), b(c).

54.     Arete needed Plaintiff's express written permission to make a hard pull on Plaintiff's credit report; Arete never had consent or permission in writing.

55.     Arete never told Plaintiff they would do a hard pull on Plaintiff's credit report. Plaintiff discovered that a hard inquiry was made when he routinely checked his monthly report on Credit Karma.

56.     Furthermore, Plaintiff did not consent over the phone to have a hard pull made on his credit report. If he were informed that such a hard pull was about to be made by Arete, Plaintiff would not have given Arete permission to do so.

57.     As a result of these calls, Plaintiff received an e-mail from "Bryan Ruiz", bryan.ruiz@aretefinancialfreedom.com, a debt settlement specialist at Defendant Arete.

11

58.     At no time did Plaintiff provide his consent to receive any further calls made using automated dialing equipment from Arete and/or its agents.

59.     After this call was concluded, Plaintiff received *at least* four (4) additional automated calls within the following hour from Arete and/or Arete's agents.

60.     Prior to these unsolicited calls, the Plaintiff has never done any business with Arete and Plaintiff never provided Arete with his cellular telephone number.

61.     Arete did not have the Plaintiff's prior express written consent to make these calls.

62.     In fact, before filing this lawsuit, the Plaintiff wrote to Arete on February 19, 2018 asking if they had his prior express written consent to make the calls, but Arete did not provide any evidence of consent.

63.     Plaintiff also requested in his e-mail to have his number placed on Arete's internal Do-Not-Call list, and requested to receive a copy of Arete's internal company Do-Not-Call policy.

64.     Plaintiff also demanded that Arete retract and/or delete its unauthorized "hard inquiry" into Plaintiff's credit report.

65.     Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite two (2) written e-mail requests.

66.     Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

67.     Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

68.     Plaintiff then called Arete on or about February 26, 2018 and spoke to Shunmin "Mike" Hsu, the CFO of the company. Mr. Hsu referred Plaintiff to Arete's attorney, William R. Mitchell, Esquire. Plaintiff called Attorney Mitchell's office and ultimately spoke to Mr.

12

Mitchell about the automated calls he had been receiving, and more importantly, about the fact

that Arete had unlawfully pulled Plaintiff's Trans Union credit report without his written or

verbal permission.

69.     On February 28, 2018, Attorney Mitchell forwarded Plaintiff a letter from Arete, laced

with grammatical mistakes and errors, which stated as follows:

TransUnion LLC
Consumer Dispute Center
P.O. Box 2000
Chester, PA 19016
2/28/2018

RE: Request for Removal of Inquiry

Dear Transunion,

Please remove inquiries made from us Arete Financial on James Walker's credit report. His

Social Security number is ***-**-****. Date of birth is 12/11/1995. These inquiries were made

in error on 02/13/2018.

When inquiry is removed please send me an updated copy of credit report and proof of removal

to his address 316 Covered Bridge Road, King Of Trussia, PA, 19406.

Thank you for your assistance in this matter,

Ruddy Palacios, *Chief Operating Officer*

Arete Financial
Toll Free: 1-888-331-5827
1-949-668-1068
Fax: 1-888-366-2219
1261 E. Dyer Rd.#100 • Santa Ana, CA 92705

70.     Plaintiff has no idea who "James Walker" is, but for some reason, Arete was associating

Plaintiff's social security number and date of birth with James Walker. This letter also had

13

Plaintiff's city misspelled as "King of Trussia" when it is in fact "King of Prussia". These issues only served to confuse Trans Union and did not resolve the issue.

71.      More concerning, Arete once again asked Trans Union for an updated copy of [Plaintiff's] credit report, which is an invasion of Plaintiff's privacy and is not something Arete is entitled to see without a permissible purpose.

72.      It was only after further communication with Arete's attorney that the letter was corrected and forwarded to Trans Union. Upon information and belief, Trans Union subsequently deleted the hard inquiry from Plaintiff's credit report between March 5 and March 13, approximately one month after the hard pull was made.

73.      Defendants knew, or should have known, that their actions violated the FCRA and TCPA. Additionally, Defendants could have taken steps necessary to bring their agent's actions within compliance of these statutes, but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

74.      At all times pertinent herein, Defendants were acting by and through their agents, servants, and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of the Defendants herein.

75.      At all times pertinent herein, the conduct of Defendants as well as their agents, servants, and/or employees, was malicious, intentional, willful, reckless, negligent, and in wanton disregard of federal and state law and the rights of Plaintiff herein.

76.      To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, and is unavailable unless Defendants can show that they had prior express consent in writing, and

14

that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Arete inquiring about the calls before filing this lawsuit.

77.     Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

78.     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

79.     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

80.     Plaintiff did not provide any one, more, or all Defendants, nor any agent of Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone.

81.     Plaintiff had no prior business relationship with any one, more, or all of Defendants.

82.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff. The calls caused

15

Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS Call" Prohibition, 47 U.S.C. § 227 et seq.)

83.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

84.     As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

85.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS Call" Prohibition, 47 U.S.C. § 227 et seq.)

86.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

87.     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

88.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

16

## Third Cause of Action

(Negligent Violation of the TCPA "DNC/ Sales Call" Prohibition, 47 U.S.C. § 227 et seq.)

89.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

90.     As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

91.     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"DNC/ Sales Call" Prohibition, 47 U.S.C. § 227 et seq.)

92.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

93.     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

94.     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

17

95.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

96.     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

97.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

98. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

99.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

100.    As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA

18

"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

101.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the
paragraphs above.

102.    As a result of Defendants' and Defendants' agents knowing and/or willful violations
of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00
for each and every violation, pursuant to the implied private right of action.

## Ninth Cause of Action

(Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681(b)(F))

Pulling Plaintiff's credit report without a permissible purpose

103.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the
paragraphs above.

104.    Plaintiff is a "person" as that term is defined in the Fair Credit Reporting Act, 15 U.S.C §
1681(a)(C).

105.    Plaintiff did not authorize Defendants to do a hard pull of his credit report.

106.    Plaintiff did not initiate any transactions with Defendants, who were the ones that called
Plaintiff.

107.    Defendants lacked a permissible purpose to obtain full credit reports on Plaintiff.

108.    Defendants violated the FCRA by willfully procuring consumer reports on Plaintiff
without a permissible purpose. See 15 U.S.C. § 1681(b)(F)).

109.    Defendants acted knowingly or recklessly. Defendant's willful conduct is reflected by,
among other things:

   a.   The FCRA was enacted in 1970; Defendants have had over 45 years to become
        compliant.

19

b.  Defendants violated a clear statutory mandate set forth in 15 U.S.C. § 1681(b)(F)).

c.  Defendants know that a hard inquiry reduces a consumer's credit score.

d.  Defendants systemically procured Plaintiff's consumer information without a permissible purpose despite a myriad of statutory text and guidance.

110.  At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C § 1681(a)(D).

111.  Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 16810, Defendant is liable to Plaintiff for willfully and negligently failing to comply with the requirements imposed on a user of consumer reports and of information pursuant to 15 U.S.C. §§ 1681e(b).

112.  The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory damages of $1,000 per violation, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:**
**V.     Prayer for Relief**

On Causes of Action 1-8:

1.  For awards of $500 for each negligent violation as set forth in actions 1-8.

2.  For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

3.  For an award of $1,000 for each FCRA violation in action 9.

4.  Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

20

Total statutory damages: **$28,000** (Eight counts each of: "ATDS Call", "Sales call to a number registered on the National Do-Not-Call Registry", and one count each of: "Failure to provide a copy of Defendant's Do-Not-Call Policy", and "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list" with treble damages for each, and $1,000 in statutory damages for violating the FCRA by pulling Plaintiff's credit report without a permissible purpose)

5. Prejudgment interest at the maximum legal rate;

6. Costs of suit herein incurred; and

7. All such other and further relief as the Court deems proper.

## VI.    **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: April 19, 2018

James E Shelton

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

21

## **VERIFICATION**

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.

Dated: May 24, 2018

*James E Shelton*

JAMES EVERETT SHELTON

18